No. 24,818.

CHARLES I. ROBINSON, *Appellee,* v. M. ESTELLA JACOBIA, *Appellant.*

SYLLABUS BY THE COURT.

1. BANKRUPTCY—*Discharge Extinguishes Legal Debt—Moral Obligation to Pay Constitutes Good Consideration for New Promise to Pay the Debt.* The extinguishment of a debt by an order of discharge made in a bankruptcy proceeding does not extinguish the moral obligation of the debtor to pay it and such moral obligation constitutes a sufficient consideration for a new promise by the debtor to pay the debt.

2. SAME—*New Promise Must Be an Express One.* To revive a debt so extinguished there must be an express new promise to pay it, not one raised merely by an implication of law, and it must refer to a specific debt.

3. SAME—*Identification of Debt Revived.* Where there is only a single debt due from the bankrupt to the promisee, it is not necessary that the debt should be definitely described in the new promise.

4. SAME—*Evidence—New Promise Revived the Debt.* The evidence examined and it is held to warrant a finding that the new promise was sufficient to revive the debt and make it an enforceable obligation of the promisor.

Appeal from Atchison district court; WILLIAM A. JACKSON, judge. Opinion filed January 12, 1924. Affirmed.

*Ernest S. Ellis, Frank W. Yale,* and *Carl G. Wagner,* all of Kansas City, Mo., for the appellant.

*Ralph U. Pfouts,* and *Charles T. Gundy,* both of Atchison, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: Estella Jacobia executed her promissory note dated April 14, 1911, payable to her brother Charles I. Robinson, for $2,134.84. It bore interest at the rate of eight per cent per annum and there were indorsements of payments thereon as follows: April 27, 1912, $100, April 9, 1916, $20, and March 15, 1920, $20. This action was brought by plaintiff on September 30, 1921, asking for the recovery of the amount due on the note. He alleged that defendant was adjudged a bankrupt on August 20, 1918, and that she obtained a discharge in bankruptcy at a date unknown to plaintiff, but which was subsequently shown to be October 31, 1919. He further alleged that since she was adjudged a bankrupt the defendant had in writing and orally promised to pay the indebtedness, once in a writing in which she requested plaintiff not to file his claim in the bankruptcy proceeding and that she would pay the debt, but

the writing, it was alleged, had been misplaced or lost and could not be attached to the petition. An oral promise to pay the debt was alleged to have been made by the defendant on March 15, 1920, and still another on September 21, 1921. In her answer defendant pleaded the adjudication and discharge in bankruptcy, stating that the note of plaintiff was scheduled and that the discharge operated to cancel it. On the trial it was shown that defendant was declared a bankrupt on her voluntary petition on August 20, 1918, and that on October 31, 1919, an order was made discharging her from all provable debts except such as were exempt. Upon the evidence, much of which was in conflict, the court gave judgment for plaintiff.

In defendant's appeal she complains of a ruling permitting plaintiff to amend his petition at the opening of the trial and of the refusal of an application for a continuance of the case. She contends that as the amended petition added new promises, all of which were set forth in a single count, she had no opportunity to attack the pleading, by a motion to require the several promises to be separately stated, and further that she should have been allowed time to procure evidence to meet the averments. The record shows that no motion attacking the pleading was presented nor was a formal motion for a continuance made. Defendant states that she asked for time to present a motion for continuance but it was denied. In her answer she expressly denied that after she was adjudged a bankrupt she had in writing or otherwise promised or agreed with plaintiff that she would pay the obligation represented by the note. Evidence was introduced as to written and oral promises and appears to have been as fully tried out as if the promises had been stated in separate counts. It is said that plaintiff's cause of action was based upon the original debt evidenced by the note and not upon the new promises. In *Needham v. Matthewson*, 81 Kan. 340, 105 Pac. 436, it was remarked that the cause of action on a discharged debt rests on the new promises rather than on the old debt. It has been held that the cause of action may be based on either the original debt or on the new promises. (*Torry v. Krauss*, 149 Ala. 200; 7 C. J. 413.) But upon the theory adopted in the Needham case plaintiff's pleading is deemed to be sufficient. Some language in the pleading indicated the theory that a recovery on the original debt was sought but it is evident that the plaintiff relied on the new promises. He recognized that the original debt had been extinguished by the discharge in bankruptcy and accordingly set

up the new promises made after the adjudication. To identify the debt covered by the new promises the note was set forth as the consideration for the new promises and judgment was asked for the amount so promised which was the amount of the original debt. It cannot be said that the court abused its discretion or committed material error in the preliminary rulings.

Were the new promises or any of them sufficient to revive the discharged debt? While the legal liability on the note was extinguished by the order of discharge, the moral obligation to pay the debt was not extinguished. The prior legal obligation was a sufficient consideration for a new promise to pay it. To be sufficient it was necessary that there should be an express promise to pay the discharged debt. (*Needham v. Matthewson,* supra.) In the absence of a statutory requirement it is not necessary that the new promise if otherwise sufficient shall be in writing. In 7 C. J. 412, it was said:

"In order to constitute a new promise there must be a clear, distinct, and unequivocal recognition and renewal of the debt as a binding obligation, but it is not necessary that the new promise should be in writing except where this is required by state statute."

As to the character of the promises made by defendant there was evidence that on March 15, 1920, when she made a payment of $20 on the note she stated, "I will pay you boys every dollar I owe you." Joe Robinson, another brother, to whom she owed money was present at the time. As to the identity of the note plaintiff's testimony was that this debt was the only obligation she has ever owed to him, and being the only debt it is claimed that a definite description of it was not necessary to a binding promise. There is testimony too that on September 21, at Atchison, defendant in the presence of plaintiff and his wife in response to a question of the wife as to payment of the note said, "I will pay you." When defendant was asked why she had asked her brother not to file their claims in the bankruptcy proceeding and why she had not allowed them to get what they could from that source and thereafter she should pay the balance, she stated, "I am going to pay them every dollar I owe them." A letter written to Mr. and Mrs. Joe Robinson, after the adjudication in bankruptcy, was lost but there was evidence of its contents to the effect that she informed them of the bankruptcy proceeding asking that the boys, her brothers, do not file claims against the estate and also stating that she would pay

the boys, "tell Charley," a name by which plaintiff was known. There is some inconsistency in the evidence as to the way defendant's statement was phrased, sometimes the witness stated that defendant said she intended to pay them, and sometimes that she would pay them.· The letter was handed to Charley, the plaintiff, and he read the statements contained in it. It was not necessary as we have seen that the new promise should be in writing and if either the oral or the written promise refers to this specific debt and is an unequivocal promise to pay it, it is enough to bind the defendant. It is not sufficient that there has been a partial payment on the note nor will the debt be revived by a general statement of the debtor's purpose or expectation to pay all his debts. To revive a debt the promise must refer to a specific obligation. Here there was but one obligation of the defendant to plaintiff in existence. She was speaking of and promising to pay her debt to him and under the circumstances it was unnecessary to specifically describe the debt. (*Goldstein v. Saur*, 162 S. W. 441 [Tex. Civ. App.].) The oral statements appear to be sufficient to make the promises binding.· She owed but one debt to him and she said she would pay it. It has been said that:

"To renew a debt barred by a certificate of bankruptcy, there must be an· express promise to pay it; express, as contradistinguished from the promise which under certain circumstances the law will imply from certain facts. This promise need not be to the holder of the debt, but it must refer to the. debt, · without question. No particular form of words need be used to constitute this promise. Any words, or perhaps signs or acts, which signify a present willingness to pay the debt, and which are intended to convey that idea to the hearer, are sufficient. The natural import of the words used must be a contract to discharge by payment the moral obligation that remains out of the debt discharged by the certificate." (*Bennett v. Everett*, 3 R. I. 152, 155.)

In 2 Black on Bankruptcy, 3rd edition, section 761, in speaking of promises which will revive a debt it was said:

"Such statements as the following have been held sufficient: 'I am going to pay you every dollar I owe you by the first of July;' 'I will pay some day, can't say when;' 'your debt I will pay if I live;' 'I will pay the note;' 'I will pay the debt before I leave the state;' the creditor 'shall have her money, even if it is but a little at a time.'"

On the whole evidence we conclude that it was sufficient to warrant the finding by the court that there was an express new promise to pay a specific debt and therefore the judgment of the district court is affirmed.